# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **VIRGINIA SPANO and SUSAN MIZAK,** | CIVIL ACTION NO. 2:17-CV-717 |
| **Plaintiffs** | (Chief Judge Conner) |
| v. | |
| **OHIO HOSPICE AND PALLIATIVE CARE d/b/a Paramount Hospice and Palliative Care, PARAMOUNT HOSPICE AND PALLIATIVE CARE, and JAMES J. COX, individually,** | |
| **Defendants** | |

## MEMORANDUM

Plaintiffs Virginia Spano ("Spano") and Susan Mizak ("Mizak") commenced this action against their former employers asserting claims under Pennsylvania's Wage Payment and Collection Law, 43 PA. STAT. AND CONS. STAT. ANN. § 260.1 *et seq.*, and the federal Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, in addition to a common-law claim for wrongful discharge. Defendants advance counterclaims against Spano for common-law conversion and breach of fiduciary duty as well as a statutory claim under Pennsylvania's Uniform Trade Secrets Act, 12 PA. CONS. STAT. § 5301 *et seq.* Spano moves for a more definite statement of defendants' counterclaims and alternatively to strike the counterclaims pursuant to Federal Rules of Civil Procedure 12(e) and 12(f). (Docs. 48, 49). Plaintiffs also seek spoliation sanctions against defendants. (Doc. 55 ¶ 2).

I.     **Factual Background & Procedural History**

Spano and Mizak are former employees of defendant Ohio Hospice and Palliative Care ("Ohio Hospice"), which does business in Pennsylvania under the name Paramount Hospice and Palliative Care ("Paramount Hospice"). (Doc. 13 ¶¶ 4-5, 8, 18). The second amended complaint generally alleges that defendants underpaid Spano and Mizak, in violation of Pennsylvania's wage-and-hour law, by not allowing them to log overtime hours on their timesheets. (See Doc. 13 ¶¶ 9, 12, 17, 20). Plaintiffs also allege that their eventual terminations on November 24, 2015, were based on age discrimination, in violation of the ADEA, and retaliation for reporting fraud and poor patient conditions, in violation of Pennsylvania common law. (See id. ¶¶ 12, 17, 31-32). Defendants supposedly prevented Spano and Mizak from completing their final timesheets and then accused Spano and Mizak of falsifying various timesheets during their employment. (Id. ¶¶ 14, 22, 37-38).

Defendants allege that, upon receiving notice of her termination, Spano entered a secure room and removed certain confidential and proprietary business records and patient records protected by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). (Doc. 46 ¶¶ 132-36). Spano shared these records with both her attorney, Robert M. Davant, Esquire ("Attorney Davant"), and Mizak. (Id. ¶¶ 138, 145). According to defendants, Attorney Davant used these records to prosecute plaintiffs' claims against defendants before the Equal Employment Opportunity Commission ("EEOC") and in the instant litigation. (Id. ¶ 148). Defendants claim that Spano violated Paramount Hospice's confidentiality statement and policy and her HIPAA training, (see id. ¶¶ 128-31, 137), and that

2

Spano's misconduct was reported to federal and state law enforcement authorities, (id. ¶ 152).

Counsel for Spano and Mizak notified defendants of their intent to sue by letter dated March 21, 2016. (Doc. 71-12). After filing charges with the EEOC and receiving right-to-sue letters, plaintiffs filed a complaint in the Court of Common Pleas of Allegheny County, Pennsylvania, which defendants timely removed to this court. In their second amended complaint, Spano and Mizak raise a bevy of claims on behalf of themselves and all others similarly situated for unpaid overtime wages, wrongful termination, and age discrimination. Defendants answered the second amended complaint and asserted counterclaims against Spano for conversion, misappropriation of trade secrets, and breach of fiduciary duty.

One of plaintiffs' pending motions concerns defendants' alleged failure to preserve sign-in and sign-out sheets in anticipation of litigation. According to plaintiffs, employees were required to sign in and out at the reception desk daily, and because defendants did not allow Spano and Mizak to log overtime on their timesheets, the sign-in and sign-out sheets more accurately reflect plaintiffs' hours worked. (Doc. 13 ¶¶ 9, 12, 17, 20). Plaintiffs served a request for production of documents on November 27, 2018, seeking sign-in and sign-out sheets from several of defendants' facilities for January 1, 2013, through November 24, 2015. (Doc. 71-9 ¶¶ 2-5). Defendants responded that sheets are not maintained for more than three months pursuant to unwritten company policy. (Id.; Doc. 71-10, Darmstadter Dep.

12:1-15; Doc. 71-18, Butter Dep. 15:7-18, 20:11-18).[1]  Defendants retained only the sign-in and sign-out sheets for the three months before plaintiffs' termination which were used to determine that plaintiffs were supposedly falsifying their timesheets. (See Doc. 71-1 at 1-9; see also Butter Dep. 6:14-10:12, 15:7-18).

Spano moves for a more definite statement of counterclaims pursuant to Federal Rule of Civil Procedure 12(e).  Alternatively, Spano seeks to strike the counterclaims under Rule 12(f).  Spano and Mizak together also move for spoliation sanctions against defendants.  The motions are fully briefed and ripe for disposition.

## II. Legal Standard

### A. Rule 12(e)

A party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e).  Any Rule 12(e) motion "must be made before filing a responsive pleading and must point out the defects complained of and the details desired." Id. Courts should only grant a motion for a more definite statement in those "rare case[s]" when a pleading is so unintelligible or ambiguous that the movant cannot prepare a response—even a simple denial—without incurring potential prejudice. Wadhwa v. Sec'y, Dep't of Veterans Affairs, 505 F. App'x 209, 214 (3d Cir. 2012) (nonprecedential) (quoting Schaedler v. Reading Eagle Publ'n, Inc., 370 F.2d 795,

---

[1] Deposition transcripts have been filed by the parties at numerous, separate docket entries.  We will cite to full deposition transcripts as "[Name] Dep.," without repeating the docket entry citation *passim*.  We employ this citation convention for any full deposition transcripts cited throughout this memorandum.  To the extent partial deposition transcripts are cited, we will retain docket entry citations for ease of location.

4

798 (3d Cir. 1967)); 5C CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1376 (3d ed. 2019).

### B. Rule 12(f)

A court may strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading. FED. R. CIV. P. 12(f). District courts have "considerable discretion in disposing of a Rule 12(f) motion to strike." 5C WRIGHT & MILLER, *supra*, § 1382; see Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015). Motions to strike are disfavored and will usually be denied unless the offending allegation has no relation to the action, prejudices one party, or will confuse the issues in the litigation. 5C WRIGHT & MILLER, *supra*, § 1382; see also Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986). Any doubts about the challenged material should be resolved in favor of the nonmovant. 5C WRIGHT & MILLER, *supra*, § 1382.

## III. Discussion

Spano argues that defendants' counterclaims lack sufficient detail to allow her to adequately answer them. Spano alternatively contends that the counterclaims are false, immaterial, impertinent, and prejudicial and should be stricken in their entirety. Spano and Mizak together seek spoliation sanctions against defendants for the destruction of sign-in and sign-out sheets pertinent to this litigation. We address these issues *seriatim*.

### A. Motion for a More Definite Statement

Rule 12(e) is an improper vehicle for addressing the issues raised in Spano's motion. Throughout her motion, Spano repeatedly seeks additional "information

5

and documentation" concerning defendants' allegations that she entered a secure room, removed confidential records, and shared those records with her attorney and co-plaintiff. (See Doc. 48). Spano will receive these materials as a matter of course during discovery. If Spano believed that defendants failed to state claims for conversion, misappropriation of trade secrets, or breach of fiduciary duty, she should have moved pursuant to Rule 12(b)(6). See 5C WRIGHT & MILLER, *supra*, § 1376. Moreover, the alleged deficiencies in defendants' counterclaims did not prevent Spano from filing a responsive pleading denying the substance of said counterclaims. (See Doc. 53).

Spano invokes the Confrontation Clause of the Sixth Amendment in support of her demand for more information regarding defendants' allegations that Spano's conduct was reported to federal and state authorities. Spano avers that she will be prejudiced in her ability to defend in any criminal or other action brought against her unless defendants are required to identify which of their employees reported her alleged unlawful conduct and what authorities were so alerted. (Doc. 52 at 4-5). The Confrontation Clause guarantees *criminal* defendants the "right . . . to be confronted with the witnesses against" them. U.S. CONST. amend. VI; United States v. Berrios, 676 F.3d 118, 125 (3d Cir. 2012). Spano cannot invoke the Confrontation Clause against a private party in a civil suit to obtain discovery prior to the close of the pleadings. See *In re* Flat Glass Antitrust Litig., 385 F.3d 350, 373 n.31 (3d Cir. 2004). Moreover, Spano fails to explain how any prejudice flowing from the purported violation of her Confrontation Clause right renders her unable to

respond to defendants' counterclaims.  For all of these reasons, we will deny Spano's motion for a more definite statement.

**B.      Motion to Strike**

Spano asks the court to strike matter in defendants' counterclaims that she believes to be "immaterial" and "impertinent."  Matter is "immaterial" for purposes of a motion to strike if it has "no essential or important relationship to the claim for relief or the defenses being pleaded."  5C WRIGHT & MILLER, *supra*, § 1382; Wagner v. Holtzapple, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015).  Similarly, portions of a pleading are "impertinent" if the statements "do not pertain, and are not necessary, to the issues in question."  5C WRIGHT & MILLER, *supra*, § 1382; Wagner, 101 F. Supp. 3d at 488.  Spano broadly argues that defendants' counterclaims have "no relation to the controversy" because the "true issues in this case are that Defendants routinely failed to pay employees overtime [and] wrongfully terminated Plaintiffs in retaliation for reporting patient abuse[] and substandard conditions and care."  (Doc. 51 at 4).  We disagree.

Defendants allege that after Spano was notified of her termination, she removed confidential business and patient records without authorization and shared those records with her attorney and her co-plaintiff for use in prosecuting plaintiffs' instant claims.  (Doc. 46 ¶¶ 132, 138, 145, 148).  Spano does not contend that defendants' counterclaims violate Federal Rule of Civil Procedure 13, (see Docs. 49, 51, 59), and a Rule 12(f) motion is not the proper vehicle for obtaining the outright dismissal of a counterclaim, 5C WRIGHT & MILLER, *supra*, § 1380.

Defendants' counterclaims and the factual allegations undergirding them are neither immaterial nor impertinent.

Spano also contends that certain material in defendants' counterclaims should be stricken as "scandalous." "Scandalous" matter "improperly casts a derogatory light on someone, most typically on a party to the action." Id. § 1382; see Wagner, 101 F. Supp. 3d at 488. Content that merely "offends the sensibilities of the objecting party" should not be stricken if it "describe[s] acts or events that are relevant to the action." 5C WRIGHT & MILLER, *supra*, § 1382. Spano requests that all scandalous allegations in defendants' counterclaims be stricken but fails to identify specific statements that meet the above criteria. (See Doc. 51 at 5). However, our independent review of defendants' counterclaims reveals several allegations that are scandalous.

We agree with Spano that the allegations concerning purported violations of the Pennsylvania Rules of Professional Conduct by Attorney Davant—a nonparty to any claim in this suit—have no bearing on the instant case and must be stricken.[2] But Spano has failed to explain how allegations as to the nature of her conduct (whether it violated federal or state law) and defendants' response to that conduct (a report to authorities) are wholly irrelevant to this case. Accordingly, we will

---

[2] In her motion, Spano repeatedly accuses defense counsel of violating Rule 3.3(a)(1) of the Pennsylvania Rules of Professional Conduct, which requires an attorney to act with candor toward the court. (See, e.g., Doc. 49 ¶ 3). Spano's recourse lies, if at all, in a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 or a complaint with the appropriate attorney disciplinary authority.

grant the motion to strike as to allegations against Attorney Davant in paragraphs 146, 147, and 149 but will deny it as to the balance of defendants' counterclaims.[3]

Spano lastly asseverates that defendants' affirmative defense of unclean hands is "manufactured" and "false." (Doc. 49 ¶ 1). She provides no further analysis in support of her request to strike this defense. Because this affirmative defense necessarily depends on the merits of defendants' counterclaims, we will not strike the defense of unclean hands. Spano also contends, without explanation, that defendants' supposedly false allegations and omissions in their counterclaims will "confuse the issues." (Doc. 51 at 5). Implicit in Spano's argument is a concern that the jury will be confused or prejudiced by the factual allegations in support of defendants' counterclaims. Any such concern is premature. Spano may move for summary judgment on defendants' counterclaims or challenge the admissibility of these factual allegations and any evidence in support thereof at an appropriate time before or during trial.

**C.      Spoliation**

Spoliation occurs when a party destroys, alters, fails to produce, or "fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." Bull v. UPS, Inc., 665 F.3d 68, 73 (3d Cir. 2012) (citations omitted). To establish that spoliation occurred, the party seeking sanctions must show that: (1) the ostensibly spoliated evidence was in the offending party's control; (2) "the

---

[3] In paragraphs 145 and 148, defendants allege that Attorney Davant retained the at-issue records and used them "against Defendants before the EEOC and in this Court." (Doc. 46 ¶¶ 145, 148). We will not strike these allegations as they are not wholly irrelevant to defendants' counterclaims.

9

evidence is relevant to the claims or defenses in the case"; (3) the party with control of the evidence actually suppressed or withheld it; and (4) "the duty to preserve the evidence was reasonably foreseeable to th[at] party." Id. (citing Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 334 (3d Cir. 1995)). An inference that the missing evidence would have been unfavorable arises only when the spoliation thereof "was intentional[] and indicates fraud and a desire to suppress the truth." Brewer, 72 F.3d at 334 (quoting 29 AM. JUR. 2D EVID. § 177).

Paramount Hospice acknowledges that the sign-in and sign-out sheets were in its control at the time they were destroyed. (Doc. 71 at 5). The parties reasonably dispute the relevance of these sheets. Spano and Mizak posit that the destroyed sign-in and sign-out sheets might have shown that employees were on site longer than their timesheets indicated, thereby lending support for the position that defendants did not allow employees to record overtime hours on their timesheets. (See Doc. 72 at 3). Defendants counter that the sign-in and sign-out sheets do not represent hours worked and note that employees might remain on site past the end of a shift to visit with a coworker or a patient with whom they have a personal relationship. (Doc. 71 at 9).

We need not resolve the parties' competing positions on relevance because defendants had no duty to preserve the sign-in and sign-out sheets at the time of their destruction and plaintiffs have not shown fraudulent intent. Spano and Mizak adduced no evidence of an intent to defraud or suppress the truth by defendants. The destruction of documents as "a matter of routine" does not support an adverse spoliation inference. Brewer, 72 F.3d at 334 (quoting 29 AM. JUR. 2D EVID. § 177).

Several employees testified during depositions that Paramount Hospice did not retain sign-in and sign-out sheets for more than three months. (Darmstadter Dep. 12:1-15; Butter Dep. 15:7-18, 20:11-18). The record is devoid of evidence refuting this testimony.

In an effort to show bad faith, Spano and Mizak identify a bevy of federal and state statutes and regulations that supposedly required defendants to maintain the sign-in and sign out-sheets for longer than three months.[4] (See Doc. 70 at 2-7). These various provisions concern patient privacy, medical records, and other identifying information. See 42 C.F.R. §§ 483.10, 483.12; 45 C.F.R. §§ 164.316(b)(2), 164.501, 164.502(a)(1)(iii), 164.530(c); 28 PA. CODE §§ 115.23(a), 211.5(c); 55 PA. CODE §§ 2600.252(12), 2600.253. Defendants correctly note that the sign-in and sign-out sheets do not contain patient names or any information regarding patients' mental or physical health or course of treatment. (See, e.g., Doc. 71-1).

Defendants were under no obligation to preserve sign-in and sign-out sheets for the time period of January 1, 2013, through November 24, 2015. According to Spano and Mizak, defendants fired them in retaliation for reporting poor patient conditions and Medicare and Medicaid fraud, and out of discriminatory animus based on plaintiffs' ages. (Doc. 13 ¶¶ 12, 17, 31-32). Defendants counter that Spano and Mizak were terminated for falsifying their timesheets. (Doc. 71 at 9-10). Neither of these competing explanations gives rise to an affirmative duty to

---

[4] Plaintiffs append to their brief in support of spoliation sanctions a three-page "expert report" by Cristen Krebs, DNP, ANP-BC. (See Doc. 70-4). Defendants challenge the expert's credentials and opinions, (Doc. 71 at 16-17), but the court will not consider the report as it is unsigned.

11

preserve sign-in and sign-out sheets for the two years preceding the adverse employment action.  And under defendants' three-month retention policy, the sign-in and sign-out sheets for the January 1, 2013, to November 24, 2015 would have been routinely destroyed by defendants prior to receiving notice of plaintiffs' wage-and-hour claims on March 21, 2016.  We cannot conclude that defendants had a duty to preserve the sought sign-in and sign-out sheets or that defendants intentionally destroyed or withheld those records from plaintiffs during discovery.

## IV. Conclusion

The court will deny Spano's motion (Doc. 48) for a more definite statement of counterclaims, deny plaintiffs' motion (Doc. 55 ¶ 2) for spoliation sanctions, and grant in part and deny part Spano's motion (Doc. 49) to strike.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: June 26, 2019